UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:15-cv-00059-FDW

| JIMMIE RUTH BARRETT, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) ORDER |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 12), Plaintiff's Memorandum in Support (Doc. No. 12-1), Defendant's Motion for Summary Judgment (Doc. No. 13), and Defendant's Memorandum in Support (Doc. No. 14). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits.

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment is GRANTED in part and DENIED as moot in part, Defendant's Motion for Summary Judgment is DENIED without prejudice, and the Administrative Law Judge's ("ALJ") decision is REMANDED.

**BACKGROUND**

On November 16, 2010, Plaintiff protectively filed an application for social security and supplemental security income benefits with an alleged disability onset date of December 25, 2003. (Doc. No. 10-3 at 11). Plaintiff's claim was denied initially on May 16, 2011, and again upon

reconsideration on January 13, 2012. (Id.).

On March 9, 2012, Plaintiff requested an administrative hearing. (Id.). ALJ Jeannie S. Bartlett presided over the hearing via teleconference on July 23, 2013, whereupon Plaintiff testified along with impartial vocational expert, David M. Boatner, M.E.d. (Id.). On August 8, 2013, the ALJ issued an unfavorable decision, finding Plaintiff not disabled within the meaning of the Social Security Act (Id. at 11-24). On December 5, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision in this case. (Id. 2-4).

Plaintiff timely filed the present action on February 3, 2015, (Doc. No. 1), and the parties' Motions for Summary Judgment are now ripe for review pursuant to 42 U.S.C. § 405 (g).

## STANDARD OF REVIEW

42 U.S.C. § 405 (g) authorizes judicial review of the Commissioner's final decision in social security cases and limits this Court's consideration to (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"; "[i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). District courts do not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Rather, a reviewing court must uphold the decision of the Commissioner, even in instances where the reviewing court would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982). In reviewing for substantial evidence, a court should not re-weigh conflicting

evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig, 76 F.3d at 589. The ALJ, and not the Court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. Hays, 907 F.2d at 1456.

The issue before this Court, therefore, is not whether Plaintiff is disabled, but whether the ALJ's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of relevant law.

## ANALYSIS

The question before the ALJ was whether Plaintiff was "disabled" under the Social Security Act between her alleged onset date of December 25, 2003, and the date of the ALJ's decision.[1] Plaintiff has the burden of proving she was disabled within the meaning of the Act in order to be entitled to benefits. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration ("SSA") uses a five step sequential evaluation process, pursuant to 20 C.F.R. § 404.1520, for determining disability claims. If a claimant is found to be disabled or not disabled at any step, the inquiry ends and the adjudicator does not proceed further in the process. Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable impairment or a combination of impairments that is severe and meets the twelve month durational requirement set forth in 20 C.F.R. § 404.1509; (3) whether the claimant's impairment or combination of impairments meets or medically equals one of The Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant has the residual functional capacity to perform the requirements of past relevant work; and, if unable to perform the requirements of past relevant

---

[1] "Disability" is defined under the Social Security Act, 42 U.S.C. § 301, et. seq., as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

3

work, (5) whether the claimant is able to adjust to other work, considering her residual functional capacity and vocational factors (age, education, and work experience). If the claimant is able to adjust to other work, considering her residual functional capacity and vocational factors, the ALJ will find her not disabled. 20 C.F.R. § 404.1520(a)(4)(i-v).

The claimant bears the burden of production and proof during the first four steps of the inquiry. Pass, 65 F.3d at 1203. If she is able to carry this burden, the burden shifts to the Commissioner to show that other work is available in the national economy which the claimant could perform. Id.

In the instant case, the ALJ determined, at step one, that Plaintiff has not been engaged in substantial gainful activity as set forth in the statute since the date of her application, November 16, 2010, through the date of the ALJ's decision, August 8, 2013. (Doc. No. 10-3 at 13). At step two, the ALJ determined that Plaintiff had severe impairments of chronic obstructive pulmonary disease, degenerative disk disease of the cervical spine, and mood disorder. (Id.). The ALJ found that Plaintiff did not meet any of the listings, at step three, but found that Plaintiff had moderate limitations in concentration, persistence, or pace. (Id. at 16-17). At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) with the following additional limitations: limited to occasional postural activity with frequent handling and fingering; working in a clean environment with no exposure to pulmonary irritants; and simple, unskilled work requiring a sit or stand option every thirty to forty-five minutes. (Id. at 18). The ALJ found that Plaintiff was incapable of performing past relevant work as a nursing facility cleaner because the required performance level exceeded Plaintiff's current residual functional capacity. (Id. at 22). At step five, the ALJ found, after first considering the claimant's age, education, work experience, and residual functional capacity, that jobs existed in

4

significant numbers in the national economy that claimant can perform. (Id. at 22).

On appeal to this Court, Plaintiff presents the following assignments of error: (1) the ALJ presented an incomplete hypothetical question to the vocational expert; (2) the ALJ failed to consider Plaintiff's mood disorder and degenerative disc disease of the cervical spine; and (3) the vocational expert's testimony does not support the ALJ's decision.[2] (Doc. No. 12-1 at 3; Doc. No. 14 at 1).

Turning to the arguments in this case, the Court has reviewed the pleadings and briefs and addresses Plaintiff's assignments of error below.

### A. Incomplete Hypothetical

Plaintiff argues the step five determination must be further developed. (Doc. No. 12-1 at 2). Plaintiff identifies three sub-issues concerning the procedures used at the step-five determination, and requests that this Court reverse the ALJ or remand her case. Upon review of the record, the Court finds that the ALJ's decision to exclude Plaintiff's mood disorder and degenerative disc disease from the posed hypothetical to the vocational expert was supported by sufficient evidence. However, the Court finds that the ALJ should be afforded sufficient opportunity to further clarify its decision to exclude Plaintiff's moderate limitations in concentration, persistence, or pace in the posed hypothetical.

Plaintiff argues that the ALJ presented a legally insufficient hypothetical to the vocational expert. The ALJ asked the expert if jobs existed for a hypothetical person with Plaintiff's age, education, work experience, where the claimant is "limited to light work [with] the ability to

---

[2] Plaintiff also alleges that she was diagnosed with lung cancer on January 18, 2015. The Commissioner is correct in asserting that this evidence does not support an appropriate argument for remand because it is neither new nor material under 42 U.S.C. § 405(g). Plaintiff has the burden of demonstrating that the evidence is new and material, and that it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R § 416.1470(b). Because Plaintiff's diagnosis occurred well over a year after the ALJ's issued decision, this evidence is collateral to Plaintiff's instant application for disability benefits. Accordingly, Plaintiff must file a new application for benefits as it relates to her lung cancer diagnosis.

5

alternate positions . . . after 30 to 40 minutes if the individual [is] standing, would be able to sit for a period of time[, and] the work must allow for frequent handling and fingering, upper extremities, and unskilled work, occasional postural limitation, and no concentrated exposure to environmental irritants." (Doc. No. 10-3 at 49). Notably, the hypothetical said nothing about Plaintiff's mental limitations.

The vocational expert responded that there were unskilled,[3] light work jobs for that person, including inspector, hand packager, hand trimmer, and labeler. (Id. at 49-50). The ALJ's hypothetical matched the ALJ's finding regarding Plaintiff's residual functional capacity. Thus, "the hypothetical was incomplete only if the ALJ failed to account for a relevant factor when determining [Plaintiff's] residual functional capacity." Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). According to Plaintiff, the ALJ did not consider her mental or physical limitations despite crediting at step two Plaintiff's diagnosis of degenerative disc disease and mood disorder, and also finding at step three Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. (Doc. No. 12-1 at 3, 4). The Court addresses each contention in turn.

1. **Degenerative Disc Disease Limitation**

Plaintiff contends the ALJ's decision should be reversed because the ALJ failed to consider limitations related to Plaintiff's degenerative disc disease in the hypothetical tendered to the vocational expert. (Doc. No. 12-1 at 6). In an attempt to support her argument, Plaintiff cites to Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984), which simply defines a non-severe impairment as "a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Plaintiff presents no substantive legal argument to this Court and, moreover,

---

[3] The regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a).

Plaintiff's contention is misplaced. The ALJ did not classify Plaintiff's degenerative disc disease as a non-severe impairment thereby precluding it from consideration when determining Plaintiff's residual functional capacity. Rather, the ALJ determined Plaintiff's degenerative disc disease to be a severe impairment, but that no symptoms resulted from the degenerative disc disease that caused a limitation or restriction having more than a minimal effect on Plaintiff's ability to perform basic work activities. (Doc. No. 10-3 at 19, 20). The ALJ considered potential limitations as a result of degenerative disc disease, but did not find limitations related to degenerative disc disease that would preclude work activity within the residual functional capacity. (Id. at 21).

In support of this finding, the ALJ relied on Plaintiff's medical records, Tuan Huynh, M.D.'s professional opinion, and the State Agency's residual functional capacity assessment. (Id.). Dr. Huynh determined Plaintiff's impairments resulted in mild postural and exertional limitations, and that she would suffer mild impairments sitting, standing, moving about, lifting, and carrying. (Id. at 19). The State Agency determined Plaintiff could sit, stand, or walk, with normal breaks, for a total of six hours out of an eight hour work day; pushing, pulling, and postural activity were unlimited; and that Plaintiff could frequently climb ramps, stairs, ladders, ropes or scaffolds, and stoop frequently. (Id. at 20). In addition, Plaintiff admitted that she could lift "30-40 pounds." (Doc. No. 10-8 at 84). Therefore, substantial evidence supports the ALJ's residual functional capacity determination, finding Plaintiff could perform light work activity with additional limitations as set out in the hypothetical posed to the vocational expert.

Plaintiff's contention that the ALJ improperly failed to consider Plaintiff's degenerative disc disease in the posed hypothetical is, therefore, without merit and remand to consider this issue is inappropriate.

## 2. Mood Disorder Limitation

The Commissioner argues the ALJ properly excluded any mood disorder limitations from the hypothetical posed to the vocational expert because the ALJ: (1) found that Plaintiff's mental impairment allegations were inconsistent with the record evidence because the record shows Plaintiff's status improved with appropriate medication and therapy; and (2) disbelieved Plaintiff's claims regarding the severity of her mental impairments because Plaintiff was non-compliant with medication and received minimal mental health treatment.

An ALJ may exclude a claimant's limitation from a posed hypothetical if the ALJ finds the limitation does not affect the claimant's ability to work. Mascio, 780 F.3d at 638. A claimant's ability to work is not affected "[i]f a symptom can be reasonably controlled by medication or treatment." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). At step three, the ALJ concluded that Plaintiff's mood disorder was not at a level sufficient to cause more than minimal limitation in Plaintiff's ability to perform basic work activities. (Doc. No. 10-3 at 16). Nonetheless, the ALJ still considered Plaintiff's medical records, Chad Ritterspach, Psy.D.'s professional opinion, and Plaintiff's Daymark Recovery records when assessing Plaintiff's mood disorder in her residual functional capacity.

Daymark Recovery documents Plaintiff's improvement with appropriate medication as well as Plaintiff's admission of improvement during her last two visits. (Doc. No. 10-8 at 121, 123). Notably, Plaintiff was compliant with therapy treatment and prescribed medication at the time of improvement. Dr. Ritterspach later diagnosed Plaintiff with mood disorder after a mental evaluation revealed symptoms of irritability, angry mood, and significant signs of malingering. (Doc. No. 10-10 at 49-50). Dr. Ritterspach found Plaintiff could understand, retain, and follow directions, but appeared to have an impaired ability to sustain attention to perform simple,

8

repetitive tasks. (Id.). Dr. Ritterspach notes Plaintiff's history of non-compliance with prescribed treatment and that she has never been hospitalized for depression or other psychiatric conditions. (Id. at 49). Because substantial evidence supports a finding of improvement during compliance with treatment and there is no evidence of psychiatric hospitalization, Plaintiff's mood disorder limitation was not a relevant factor in the hypothetical tendered to the vocational expert.

Therefore, Plaintiff's contention is without merit and remand is inappropriate on this issue.

### 3. Moderate Limitation in Concentration, Persistence, or Pace

Plaintiff inartfully argues the ALJ failed to consider Plaintiff's mental limitation with regard to concentration, persistence, or pace in the hypothetical tendered to the vocational expert. Notably, Plaintiff fails to argue remand is warranted pursuant to the Fourth Circuit's recent decision through citation to and discussion of Mascio, notwithstanding the fact that opinion had issued well-before Plaintiff's brief was due to this Court. The Commissioner argues Mascio is inapplicable because a moderate limitation in concentration, persistence, or pace does not automatically translate into a limitation in Plaintiff's residual functional capacity. The Commissioner further argues the ALJ sufficiently explained that the Plaintiff's moderate limitations in concentration, persistence, or pace "does not equate to the inability to concentrate for at least a two-hour period." (Doc. No. 14 at 11).

At step five, the ALJ must determine that a significant number of jobs exist in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). An ALJ makes this decision after applying the Medical Vocational Guidelines or by obtaining the testimony of a vocational expert. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011). In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which embraces all the claimant's impairments. Walker v.

9

Bowen, 889 F.3d 47, 50-51 (4th Cir. 1989).

Here, the ALJ failed to account for Plaintiff's moderate limitation in concentration, persistence, or pace during the residual functional capacity analysis because, at step three, the ALJ concluded that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps [two] and [three] of the sequential evaluation process." (Doc- No. 10-3 at 18). The ALJ cites to Social Security Ruling 96-8p, finding that "the mental residual functional capacity assessment used at steps [four] and [five] . . . requires a more detailed assessment," and therefore, the "residual functional capacity assessment reflects the degree of limitation [the ALJ] found in the 'paragraph B' mental function analysis." (Id.). The ALJ correctly cites to Social Security Ruling 96-8p. However, while the psychiatric review technique and the residual functional capacity analysis are unquestionably distinct, nothing precludes the ALJ from considering the results of the former in its determination of the latter. See Ramirez v. Barnhart, 372 F.3d 546, 555 (3d Cir. 2004) ("While [Social Security Ruling] 96-8p does state that the psychiatric review technique findings are 'not an RFC assessment' and that step four requires a 'more detailed assessment,' it does not follow that . . . the psychiatric review technique [findings] play no role in steps four and five, and [Social Security Ruling 98-6p contains no such prohibition.").

In Mascio, the Fourth Circuit held the hypothetical tendered to the vocational expert was legally insufficient because the ALJ failed to explain why the plaintiff's moderate mental limitation in concentration, persistence, or pace did not translate into the residual functional capacity analysis. 780 F.3d at 638. The court found that an ALJ does not sufficiently account for a claimant's limitation in concentration, persistence, or pace by simply limiting the hypothetical to simple or unskilled work. Mascio, 780 F.3d at 638 (citing Winschel, 631 F.3d at 1180 (joining

10

the Third, Seventh, and Eighth Circuits)). On the other hand, where an ALJ finds that the concentration, persistence, or pace limitation does not affect the claimant's ability to work then exclusion of the limitation from the hypothetical tendered to the vocational expert is appropriate. Mascio, 780 F.3d at 638; see also Winschel, 631 F.3d at 1180 ("But when medical evidence demonstrates that a claimant can engage in simple, routine, tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations."). The Mascio Court remanded because the ALJ provided no explanation *at all* regarding whether the claimant's limitation affected her residual functional capacity. Mascio, 780 F.3d at 638.

In this case, the ALJ determined at step three that Plaintiff's mental impairments caused a moderate limitation in maintaining concentration, persistence, or pace. But the ALJ failed to indicate that this moderate limitation did not affect Plaintiff's ability to work nor did the ALJ otherwise implicitly account for the limitation in the hypothetical. A basis for the ALJ's one line explanation—that Plaintiff's moderate limitation does not equate to an inability to concentrate for at least a two hour period—can be found in the State Agency's residual functional capacity assessment. (Doc. 10-4 at 55). The State Agency's medical consultant found that Plaintiff was "able to understand and remember simple three-step directions" and despite "some deficits in sustained concentration . . . claimant is able to sustain sufficient attention to complete simple routine tasks for a [two-hour] period at a non-production pace." (Id.). At the oral hearing, the vocational expert testified the unskilled, light job titles provided in his opinion would require Plaintiff to concentrate for at least a two-hour period four hours a day, and that *all* unskilled, light job titles are *production* based. (Doc No. 10-3 at 50, 51). This discrepancy needs to be further explained absent a corresponding limitation in Plaintiff's residual functional capacity analysis.

11

Because the ALJ never implicitly accounted for Plaintiff's limitation in concentration, persistence, or pace in the posed hypothetical nor did the ALJ explicitly find that this limitation does not affect Plaintiff's ability to work, the Court cannot fully evaluate whether substantial evidence supports the ALJ's final decision.[4]

## CONCLUSION

For the reasons given, Plaintiff's Motion for Summary Judgment is GRANTED in part and DENIED as moot in part, Defendant's Motion for Summary Judgment is DENIED without prejudice, and the Administrative Law Judge's ("ALJ") decision is REMANDED. In remanding, the Court expresses no opinion as to whether the ALJ should or should not reach a different result.

**IT IS SO ORDERED.**

Signed: January 4, 2016

_____
Frank D. Whitney
Chief United States District Judge

---

[4] Plaintiff makes one final contention arguing that the vocational expert's failure to provide the Dictionary of Occupational Title code numbers for the representative occupations undermined the ALJ's decision. (See Doc. No. 12-1 at 6). The Court denies this issue as moot in light of the Court's ruling. Moreover, because there is no evident discrepancy between the vocational expert's testimony and the DOT, such an oversight does not amount to reversible error. See Justin v. Massanari, 20 Fed.Appx. 158, 160 (4th Cir. 2001) (finding that the ALJ is only required "to address evident discrepancies between a vocational expert's testimony and the [DOT]").